**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BERNARD GARCARZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABELA'S, INC., THEODORE M. ARMSTRONG, JAMES W. CABELA, JOHN H. EDMONDSON, DENNIS HIGHBY, MICHAEL R. MCCARTHY, DONNA M. MILROD, THOMAS L. MILLNER, BETH M. PRITCHARD, PETER S. SWINBURN, and JAMES F. WRIGHT,<br><br>Defendants. | ) | **CIVIL ACTION NO. ___________**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |

Plaintiff Bernard Garcarz ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Cabela's, Inc. ("Cabela's" or the "Company") against the members of Cabela's Board of Directors (the "Board" or the "Individual Defendants") or their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Bass Pro Group, LLC ("Bass Pro Group" or "Parent").

2. On October 3, 2016, Bass Pro Group and the Company announced they had entered into an Agreement and Plan of Merger dated October 3, 2016 ("Merger Agreement"), by which Bass Pro Group, through its wholly owned subsidiary, Prairie Merger Sub, Inc., ("Merger

Sub"), will acquire all of the outstanding shares of Cabela's in an all-cash transaction in which Cabela's stockholders will receive $65.50 per share (the "Proposed Transaction").

3. Following difficulties in the approval of the sale of Cabela's credit card business, the Company and Bass Pro Group amended the original merger agreement and entered into an Amendment to Agreement and Plan of Merger ("Merger Amendment") reducing stockholder compensation to $61.50 in cash per share of Cabela's common stock (the "Proposed Transaction").

4. The Proposed Transaction has a total transaction value of approximately $5 billion and is expected to close in the third quarter of 2017.

5. On May 23, 2017, Cabela's filed a preliminary proxy statement on a Schedule 14A (the "Proxy") with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, which were prepared by Company management and relied upon by Guggenheim Securities LLC ("Guggenheim"), the Company's financial advisor.

6. Without additional information the Proxy is materially misleading in violation of federal securities laws.

7. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

8. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Cabela's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

10. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Cabela's is incorporated in this District; and (ii) the corporate transactions, actions, and wrongs complained of herein, can only occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

12. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Cabela's.

13. Cabela's is a corporation organized and existing under the laws of the State of Delaware. It maintains principal executive offices at One Cabela Drive, Sidney, Nebraska, 69160.

14. Defendant Theodore M. Armstrong ("Armstrong") has served as a director of the Company since December 2004.

15. Defendant James W. Cabela ("Cabela") is the Chairman of the Cabela's Board, and co-founder of the Company. Cabela has served as a director since the incorporation of the Company in 1965.

16. Defendant John H. Edmondson ("Edmondson") has served as a director of the Company since October 2007.

17. Defendant Dennis Highby ("Highby") has served as a director of the Company since July 2003 and served as President and Chief Executive Officer from July 2003 to March 2009.

18. Defendant Michael R. McCarthy ("McCarthy") has served as a director of the Company since 1996.

19. Defendant Thomas L. Milner ("Milner") has served as President and Chief Executive Officer, and as a director of the Company since April 2009.

20. Defendant Donna M. Milrod ("Milrod") has served as a director of the Company since February 2014.

21. Defendant Beth M. Pritchard ("Pritchard") has served as a director of the Company since March 2011.

22. Defendant Peter S. Swinburn ("Swinburn") has served as a director of the Company since August 2015.

23. Defendant James F. Wright has served as a director of the Company since April 2015.

24. Defendants referenced in ¶¶ 14 through 23 are collectively referred to as Individual Defendants and/or the Board.

25. Relevant non-party Bass Pro Group is a limited liability company organized and existing under the laws of the Delaware. Bass Pro Group maintains its corporate headquarters at 1935 South Campbell, Springfield, Missouri, 65807. Bass Pro Group is a privately-owned company, founded by its Chief Executive Officer Johnny Morris ("Morris").

26. Relevant non-party Merger Sub is a Delaware corporation and wholly owned subsidiary of Bass Pro Group that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own Cabela's common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Merger Agreement states that, as of September 30, 2016, there were 71,595,020 shares of common stock outstanding. All members of the Class may be identified from records maintained by Cabela's or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

30. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

31. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

***Company Background and the Proposed Transaction***

33. Cabela's, founded in 1961 by Dick, Mary, and Jim Cabela, markets hunting, fishing, camping, shooting sports, and related outdoor merchandise. Over 19,000 employees operate 85 retail locations, a catalog business, and online sales.

34. Cabela's also issues the Cabela's CLUB Visa credit card through its banking subsidiary, World's Foremost Bank. As part of the Proposed Transaction, Cabela's is selling World's Foremost Bank to Synovus Bank.

35. The Company and Bass Pro Group originally announced a combination on October 3, 2016, at a price of $65.50 per share. This initial transaction contemplated the sale of World's Foremost Bank to Capital One, National Association ("CONA"). The announcement read, in relevant part:

> SPRINGFIELD, Mo. & SIDNEY, Neb.--(BUSINESS WIRE)--Oct. 3, 2016--Bass Pro Shops and Cabela's Incorporated (NYSE:CAB), two iconic American outdoor companies with similar humble origins, and with a shared goal to better serve those who love the outdoors, today announced that they have entered into a definitive agreement under which Bass Pro Shops will acquire Cabela's for $65.50 per share in cash, representing an aggregate transaction value of approximately $5.5 billion.
>
> In addition, upon closing Bass Pro Shops will commence a multi-year partnership agreement with Capital One, National Association, a wholly-owned national banking subsidiary of Capital One Financial Corporation (NYSE: COF), under which Capital One will originate and service the Cabela's CLUB, Cabela's co-branded credit card, and Bass Pro Shops will maintain a seamless integration between the credit card program and the combined companies' retail operations and deep customer relationships. All Cabela's CLUB points and Bass Pro Shops Outdoor Rewards points will be unaffected by the transactions and customers can continue to use their credit cards as they were prior to the transaction. Capital One intends to continue to operate the Cabela's CLUB servicing center in Lincoln, Nebraska.
>
> A driving force behind this agreement is the highly complementary business philosophies, product offerings, expertise and geographic footprints of the two businesses. The essence of both Bass Pro Shops and Cabela's is a deep passion to serve outdoor enthusiasts and support conservation. The combination brings together three of the nation's premier sporting brands: Cabela's, a leader in hunting; Bass Pro Shops, a leader in fishing; and White River Marine Group, a worldwide leader in boating, which is part of Bass Pro Shops.
>
> Bass Pro Shops, Cabela's and White River Marine Group represent the best of American entrepreneurship, innovation and devotion to customers. The combined companies will strive to provide a remarkably enhanced experience for customers, increased opportunities for team members and greater support for conservation activities.
>
> * * *
>
> MANAGEMENT COMMENTARY

"Today's announcement marks an exceptional opportunity to bring together three special companies with an abiding love for the outdoors and a passion for serving sportsmen and sportswomen," said Johnny Morris, founder and CEO of Bass Pro Shops. "The story of each of these companies could only have happened in America, made possible by our uniquely American free enterprise system. We have enormous admiration for Cabela's, its founders and outfitters, and its loyal base of customers. We look forward to continuing to celebrate and grow the Cabela's brand alongside Bass Pro Shops and White River as one unified outdoor family."

"Cabela's is pleased to have found the ideal partner in Bass Pro Shops," said Tommy Millner, Cabela's Chief Executive Officer. "Having undertaken a thorough strategic review, during which we assessed a wide variety of options to maximize value, the Board unanimously concluded that this combination with Bass Pro Shops is the best path forward for Cabela's, its shareholders, outfitters and customers. In addition to providing significant immediate value to our shareholders, this partnership provides a unique platform from which our brand will be extremely well positioned to continue to serve outdoor enthusiasts worldwide for generations to come."

"This opportunity would not be possible without the contributions of the many wonderful Cabela's, Bass Pro Shops and White River team members," Morris said. "All three companies are blessed to have been built by the extraordinary efforts of many tremendously talented, dedicated people throughout our respective histories, and we're thrilled to consider what the combined team can achieve going forward."

Following the closing of the transaction, Bass Pro Shops intends to celebrate and grow the Cabela's brand and will build on qualities that respective customers love most about Cabela's and Bass Pro Shops. In addition, Bass Pro Shops recognizes the strength of Cabela's CLUB Loyalty program and intends to honor Cabela's customer rewards and sees potential over time to expand the program in the combined company.

Bass Pro Shops appreciates and understands the deep ties between Cabela's and the community of Sidney, Nebraska. Dick, Mary and Jim Cabela founded their company in Sidney in 1961, and the company has flourished with its base of operations there ever since. Bass Pro Shops intends to continue to maintain important bases of operations in Sidney and Lincoln and hopes to continue the very favorable connections to those communities and the Cabela's team members residing there. Bass Pro Shops Founder and CEO Johnny Morris will continue as CEO and majority shareholder of the new entity, which will remain a private company with a continuing long-term view of supporting the industry and conservation. Morris earned a reputation as a leading retailer and conservationist. In 2008, the National Retail Federation named him as Retail Innovator of the Year. In 2015, the same organization

> named him as one of 25 People Shaping the Future of Retail in America. In 2012, The Association of Fish and Wildlife Agencies named Morris Citizen Conservationist of the Year. "Conservation is at the heart and soul of Bass Pro Shops. Bass Pro Shops and Cabela's share a steadfast belief that the future of our industry, and the outdoor sports we all love, depends - more than anything else - on how we manage our natural resources," said Morris. "By combining our efforts, we can have a profound positive impact on the conservation challenges of our day and help foster the next generation of outdoor enthusiasts."
>
> * * *
>
> TRANSACTION DETAILS
> The transaction provides Cabela's shareholders with a premium of 19.2% to Cabela's closing share price on Sep. 30, 2016, the day prior to announcement of the transaction, 39.7% to the closing share price on Dec. 1, 2015, the day before Cabela's announced its exploration of strategic alternatives and 57.1% to the 90-day volume weighted trading average prior to Dec. 1, 2015. Immediately prior to closing, Capital One will acquire certain assets and assume certain liabilities of Cabela's World's Foremost Bank.
>
> The cash proceeds from this transaction will remain with Cabela's until it is acquired by Bass Pro Shops. The transaction agreements were unanimously approved by Cabela's Board of Directors following a comprehensive review of strategic and financial alternatives.
>
> The transaction, which is expected to close in the first half of 2017, will be completed through a cash merger and is subject to approval by Cabela's shareholders, as well as regulatory approvals and other customary closing conditions.

36. Following regulatory interference from the Office of the Comptroller of the Currency in connection with CONA's anti-money laundering consent order, CONA could no longer purchase World's Foremost Bank quickly enough to permit completion of the transaction with Bass Pro Group within the time permitted by the Merger Agreement.

37. On April 17, 2017, the Company and Synovus Bank announced that Synovus Bank would acquire World's Foremost Bank, with Synovus retaining the deposits of World's Foremost Bank while selling the CLUB Visa credit card program to CONA. Because Cabela's

financial performance and outlook declined during the time following the October Merger Agreement, Cabela's and Bass Pro Group negotiated a new price of $61.50 per share.

38. The Company and Bass Pro Group announced the revisions, reading in relevant part:

> SIDNEY, Neb.--(BUSINESS WIRE)--Apr. 17, 2017-- Cabela's Incorporated (NYSE:CAB) today announced that it has entered into agreements with subsidiaries of Synovus Financial Corp. (NYSE:SNV) and Capital One Financial Corporation (NYSE:COF) ("Capital One") (the "Bank Transaction Agreements") in connection with the sale of the assets and liabilities of Cabela's wholly owned bank subsidiary, World's Foremost Bank (the "Bank").
>
> Under the terms of the Bank Transaction Agreements, Synovus Bank ("Synovus"), a bank subsidiary of Synovus Financial Corp., a financial services company based in Columbus, Georgia, with approximately $30 billion in assets, will acquire certain assets and assume certain liabilities of the Bank, including deposits totaling approximately $1.2 billion. Following the completion of the sale of the Bank's assets and liabilities, Synovus will sell the Bank's credit card assets and related liabilities to Capital One. Synovus will retain the Bank's deposits.
>
> As originally announced, Capital One will be the exclusive issuing partner of Cabela's branded CLUB Visa program pursuant to a 10-year program agreement. Capital One intends to continue to operate the Cabela's CLUB servicing center in Lincoln, Nebraska.
>
> Cabela's also announced that it has amended the terms of the definitive merger agreement signed on October 3, 2016, under which Bass Pro Shops will acquire Cabela's (the "Amended Merger Agreement"). Under the Amended Merger Agreement, Bass Pro Shops will acquire Cabela's for $61.50 per share in cash, representing an aggregate transaction value of approximately $5.0 billion. Cabela's Board of Directors unanimously approved the transaction, which is expected to close in the third quarter of 2017, subject to Cabela's shareholder approval, regulatory approvals and other customary closing conditions. Additional detail about the Amended Merger Agreement can be found in the Form 8-K that Cabela's will file with the Securities and Exchange Commission.
>
> "We're excited to announce this agreement, which allows us to look ahead with greater certainty toward the completion of our merger with Bass Pro Shops and offers a positive step forward for all parties," said Tommy Millner, Cabela's Chief Executive Officer. "We look forward to completing these

> transactions for the benefit of our shareholders, Outfitters and outdoor enthusiasts."
>
> Johnny Morris, founder and CEO of Bass Pro Shops said, "We remain excited about the exceptional opportunity we have to continue to serve sportsmen and sportswomen by bringing together Cabela's, Bass Pro Shops and White River Marine Group. Today's announcement is an important step forward and we are excited about the opportunity to continue celebrating the great Cabela's brand with ours as one unified outdoor family for our customers and for conservation."
>
> The Bass Pro Shops merger remains subject to approval by Cabela's shareholders, as well as antitrust clearance and other customary closing conditions.
>
> The Bank transaction is subject to regulatory approvals by Synovus's primary bank regulators and other customary closing conditions. The Bank transaction will close immediately prior to the closing of the Bass Pro Shops merger.

***The Materially Misleading and Incomplete Proxy***

39. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Misleading Statements and Omissions Regarding the Company's Financial Projections***

40. The Proxy fails to provide material information concerning the Company's financial projections.

41. The Proxy discloses "Forward-Looking Financial Information" that the Company provided to the Board and Guggenheim during the process leading up to the execution of the Merger Agreement. The items forecasted include Net Sales, EBITDA, Net Income, Net Income Per Diluted Share, and Unlevered Free Cash Flow.

42. The Proxy only provides Company projections for five metrics: Net Sales, EBITDA, Net Income, Net Income Per Diluted Share, and Unlevered Free Cash Flow.

However, the Proxy fails to provide line item metrics used to calculate the non-GAAP measures of EBITDA and Unlevered Free Cash Flow. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

43. When a company discloses information in a Proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

44. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders. Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Cabela's has included in the Proxy), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

[1] Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

45. Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

46. Defendants' failure to provide Cabela's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of Cabela's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the

---

2 *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

3 *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

51. All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

52. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a properly informed vote on the Proposed Transaction.

53. Plaintiff and the Class have no adequate remedy at law.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Cabela's within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cabela's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

58. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 7, 2017

**RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*

Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
(202) 524-4290